**NELSON WILLIAMS v. RUBY G. BULLINGTON, sometimes known as Ruby G. Mulligan.**

32 So. (2nd) 273                               June Term, 1947
October 24, 1947                                      Division A
Rehearing denied November 12, 1947

*Glenn Bludworth,* for appellant.
*Alfred E. Sapp,* for appellee.

TERRELL, J.:

First a philandering escapade in Virginia, second a meretricious episode in Palm Beach and then a law suit in Miami. Such was the evolution of this litigation. Both parties had previously dabbled in the fire of Eros and had taken a fling at matrimony but wearied of the venture and gave it up. When they sojourned in Palm Beach and settled in Miami they represented themselves to be man and wife. Milligan, one of the principals, entered into contract at Miami for the purchase of two vacant lots for $700.00, payable at $15.00 per month. Through the joint effort of Milligan and Mrs. Bullington, Milligan's concubine, a house was constructed on said lots, in which both lived till September 1941, when Milligan returned to Virginia, leaving Mrs. Bullington occupying the house.

Before Milligan left for Virginia, the payments on the lots were in arrears but Mrs. Bullington advanced him $300.00 to bring them up to date, with the understanding that she be

given one-half interest in them. The contract of purchase was amended to show that Milligan and Mrs. Bullington were joint purchasers.

When Milligan left for Virginia he agreed to send Mrs. Bullington money to make repairs on the house and finish the payments on the lots. Some months after he left he sent her a will which in effect devised her all his interest in the property and with it a memorandum to the effect that when the purchase contract was paid in full the property should be deeded to them jointly for life with remainder to the survivor in fee, at which time the will should be destroyed by the survivor.

In August 1942, Milligan married another woman in Virginia. In April 1945 without Mrs. Bullington's knowledge, he secured a deed to the property in question and in December 1945 he and his lately acquired wife deeded it to the appellant, Nelson Williams, who in April 1946 obtained a certificate from the OPA, authorizing him to evict Mrs. Bullington from the premises. The later act precipitated an intense period of legal and personal sparring (not necessary to detail), in which the parties hereto, the neighbors, the policeman and others took a hand but when the atmosphere cleared Mrs. Bullington was mistress of the premises.

In September 1946, she instituted this suit against the Milligans and Williams, their grantor, by bill for declaratory decree in which she prayed, (1) for injunction against further interference with her peaceable occupation and possession of the premises, (2) an adjudication that she was the owner of one-half interest in the property and was entitled to have her interest therein quieted, (3) Order the property partitioned and her part awarded to her, and (4) grant her a divorce from Milligan if the court should find that she had contracted a common law marriage with him, as alleged in the bill. At final hearing the chancellor decreed that no common law marriage existed between the parties, that Mrs. Bullington was the owner of one-half interest in the property, and that it be partitioned and her part awarded to her. A motion to amend the final decree was denied and this appeal was prosecuted.

A variety of questions are urged for adjudication but the material ones converge on the charge that the bill of complaint is multifarious.

It is contended in other words, that the ownership of the property in question, the determination vel non of a common law marriage, and the adjudication of the chancellor's decree enjoining the ejectment action cannot be done in one and the same proceeding.

The suit undoubtedly had two primary but closely related purposes. (1) To adjudicate the question of whether or not a common law marriage had been contracted between Milligan and Mrs. Bullington and if an affirmative answer be given to this question, that they be divorced. (2) That Mrs. Bullington's interest in the property in question be adjudicated. Shortly after the bill in the equity suit was filed, an ejectment suit was instituted against Mrs. Bullington and its further prosecution was enjoined pending the determination of the equity suit.

The law is so well settled as not to require supporting authority, that when courts of law and equity have coordinate jurisdiction in a cause, the court first assuming jurisdiction will retain it and determine the whole controversy. Metropolitan Ice Palace v. Taber, 140 Fla. 519, 192 So. 179. Kooman's Florida Chancery Pleading and Practice, Sec. 258, pages 285-587, 1946 Pocket Supplement, page 162. It was therefore proper that the ejectment suit be enjoined pending the disposition of the suit in equity.

The charge of multifariousness is completely refuted by Section 63.31, Florida Statutes 1941. See also Kooman's Florida Pleading and Practice, Section 42. In suits for divorce and alimony this Court has frequently adjudicated both the marital status and the property rights of the parties in the same suit. Under the facts shown in this case, there certainly could be no objection to adjudicating the common law marriage controversy and the status of the property claims between the parties. The evidence is ample to support the chancellor's decree on both points. It is the policy of the law to adjudicate as many causes of action against the defendant as possible in one suit.

622

We also find ample support for the chancellor's holding that Williams and Mrs. Bullington were tenants in common of the lands in question, and that they were subject to partition, that when Milligan secured the deed from his grantor, he thereafter held the bare legal title to half interest thereof in trust for Mrs. Bullington, and that when Williams purchased from Milligan he merely stepped into Milligan's shoes.

But appellant says that Mrs. Bullington should not be decreed a resulting trust in said lands.because the transaction on which it is based was in furtherance of an illicit relation. There is ample evidence to support the illicit relation but there is no showing that it had any relation to the land purchase contract. If the land transaction had been in furtherance of or in consideration for the illicit relation there might be substance to this contention. It might likewise be true if legal precepts were required to parallel moral precepts, but that is not the case. The illicit relation was commenced years before the land contract was made, and had no connection with or dependence on it. One might recoil under the knowledge that another's home was paid for with the proceeds of bootleg liquor but there is no theory under the law that it could be confiscated for that reason.

We are accordingly convinced that the chancellor correctly enjoined the ejectment action pending the disposal of the equity suit, that he properly adjudicated the sufficiency of the amended bill of complaint and overruled exceptions to the master's report. The final decree is therefore affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.